Ries v. Wolf.

## BOUNDARY LINE—EJECTMENT.

[Huron Circuit Court.]

Haynes, Scribner and King, JJ.

### JOHN L. RIES v. E. M. WOLF.

ACTION BARRED AFTER LAPSE OF TWENTY-ONE YEARS.

Where adjoining proprietors have agreed upon a division line between their respective lots and have settled upon and occupied up to it, for a period of more than twenty-one years, it is then too late for either party to claim an action to recover up to the true line, or division line of the lot; such action being barred by the statute of limitations.

HAYNES, J.

A petition in error in the case of John L. Ries, plaintiff in error, against E. M. Wolf, defendant in error, was filed in this court for the purpose of reversing the judgment of the court of common pleas, wherein an action was brought by Wolf in enjectment for twenty-six inches of land fronting on Main street in the village of Bellevue, and extending back to the depth of 110 feet being, as alleged in the petition, off of the west side of the east half of the lot, No. 63, in Bellevue. The case was once tried to a jury and a verdict was rendered for the plaintiff which was set aside by the court of common pleas and was retried in that court, judgment being rendered for the plaintiff below against the plaintiff in error here. A motion was filed to set aside the verdict which was overruled and judgment was entered for the plaintiff below, and to that judgment a petition in error was filed in this court.

The facts of the case briefly, as they appear in the petition and in the evidence, are that sometime in the year of 1849, the parties perhaps who originally platted the ground, Harkness by name and some others, deeded or conveyed the one-half of this original lot No. 74, to certain parties and the east half of it to another party. The deeds were not in fact, made until a little after that time.

The evidence shows that a man by the name of Lawerence was in possession in 1849, and that subsequently he obtained a deed which was in his possession and claiming to be the owner of the property and occupying it as such. At that time, Doctor Goodson and a man by the name of Little were the purchasers of the land. After the purchase was made, according to the testimony of Doctor Goodson, which stands here undisputed, the parties met for the purpose of dividing the property between themselves and staking out the division line. There are three lots laid out on a triangle which is described by Main street on one side, Sandusky street on another side and some street on the third side. The east lot now No. 62, is a much deeper lot, standing along Sandusky street, than lot No. 63, and the east side of lot No 63 is much longer than the west side of the same lot; west of it is another lot which itself is a triangle.

Under this state of facts, according to Doctor Goodson, the parties met and agreed that the dividing line should be based approximately upon the division lot by area per foot and that, in the division that they made at that time, the dividing line would be about five feet perhaps from the true center line, if measured by the frontage of the lot on Main street. To that, it seems Harkness was present, the original owner, —

Goodson was present and Lawerence was present, and they were all consenting to this arrangement and that matter was carried into a deed of all the undivided half of the lot, to each party. It was agreed between Lawrence and Goodson that there should be a fence built on the dividing line,—part of Lawrence and a part of Goodson, which part ea.h was to build Goodson does not say in his deposition, but the fence was soon erected from Main street south and approximately near this line, as we think from the evidence, and the parties proceeded to occupy their respective premises. The east half occupied by Lawrence had upon it at that time, a house that had been built by a man by the name of Wolf, or if not, a house was built there soon after and there is a house standing there now which was built at an early day which is called the "Wolf House." This fence that was built ran west of that house and the other side of the property was built upon; sooner or later a house was built very near the line fence and subsequently there was an extension to that house which was built a little further south, and, as it is said, was very close to the fence. The parties continued to occupy with that fence in that position at least a generation of men, or for more than twenty-one years when, in consequence of the growth of the town and the changes that were being made, the fence adjoining Main street and for some distance back was removed, but certain posts that were originally a part of the fence, were left standing until a later period and perhaps were left until the commencement of this suit.

The contention of the plaintiff is that he is entitled to hold up to the center line dividing the property into equal halves by the division made upon the line of Main street. The original lot was ninty-nine feet and he claims he is entitled to forty-nine feet and six inches and the other party is also entitled with him, to a like amount.

Testimony is offered to show that some deeds had been given of the west half of the property by description, that described the property as forty-nine feet and six inches upon Main street; but the parties continued to occupy up to the line of the fence, as I have said, for more than twenty-one years. The contention really, when it came to the trial, after giving in the record evidence and some other matters, arose upon the question as to the position of the fence as it was originally built under the arrangement between Goodson, Lawrence and others, and on that point there has been considerable testimony taken, a number of witnesses on each side having testified in regard to the matter.

The contention on the part of the plaintiff is that the fence was more than three feet over from the present Wolf house and that that would bring the fence well over towards the true center line divided by the foot front.

On the other hand, the contention is that the fence has never been changed, and that it stood in the position in which it was originally built, and that it was built so it passed a little east of the buildings that had been put upon the west half.

The testimony having been placed before the jury, the court in its charge, being requested to charge upon certain points, decline to give the charges generally and gave a charge of its own. Leaving out in so doing, one or two requests of the plaintiff, he charged beyond that substantially, perhaps, as the plaintiff, or the defendant would desire.

The court, after proceeding to state the issues that were made which included as a matter of defense, the statute of limitations, claiming that the defendant and those under whom he claimed, held, occupied and used

Ries v. Wolf.

the premises for a period of more than twenty-one years, openly, notoriously and adversely, and claiming to be the owner, charged as follows: " By the concession of the attorneys and the undisputed facts as shown to you, as early as 1839, the then owners of this property by their own act, divided it and established a line by building a fence which has been acquiesced in from that day to this, as conceded by counsel; therefore, I say to you gentlemen, that you need give no further consideration to the effect of these various deeds that have been offered in evidence, except in so far as they may tend to show to you the exact line of the then fence put in there in 1839; because, by the undisputed facts and the admission of counsel, from that time up until 1873, these various parties, and those under whom they claim, occupied and held these respective premises up to that date, to that line, and therefore on matter what went before,—what the condition of these deeds was, as introduced, each party then held and owned a legal estate up to that line on their respective sides."

He then submitted a form of verdict to the jury, or perhaps two or three of them, but we have only one of them before us because that was the verdict that was returned by the jury.

The jury returned this verdict; and it was the verdict submitted to the jury and returned by them:

Now comes said jury into open court with their verdict in writing, signed by their foreman, and say: " We the jury being duly empaneled and sworn, find the issues in the case in favor of the plaintiff, and we find that the plaintiff has a legal estate in, and is entitled to the possession of the following described real estate situated in the village of Bellevue, county of Huron, and state of Ohio, and described as follows: beginning for the same at a point 146 feet and 10 inches from the northeast corner of lot No. 62, said lot No. 62 being at the intersection of Main and Sandusky street; thence west on the south line of said Main street 26 inches; thence south parallel with Sandusky street, 110 feet; thence east 26 inches; thence north 110 feet to the place of beginning."

Taking out ninety-nine feet which was the width of the first lot and starting forty-seven feet and ten inches from the northeasterly corner of this lot and proceeding thence two feet and two inches, would bring the amount of land that is returned by the verdict of the jury, an inch or so over the true center line and they probably made a miscalculation in figuring. It at least brought it up to the original center line, and for that, judgment is rendered.

We think, and the question was submitted to us on the ground that the verdict was not sustained by sufficient evidence, that under the laws of the state of Ohio, that the jury have erred in returning a verdict for that amount of land; we think the testimony shows that the original parties who fixed the line that should be the division line between them, fixed it at the point east of what was the true center line, and the only question is as to the distance it is east of that fence. The court charged the jury that the plaintiff could recover only for so much of the land as they found to lie east of that fence, not east of the true line, and the jury must have found, in rendering this verdict, that the fence was originally built upon the true line.

The testimony of a number of witnesses was taken, as I have said, and there is the usual discrimination among them resulting largely from a want of memory in regard to the matter, and when called up, start out by saying they don't know anything about the matter, but they guess it.

9 ⊙ C D. 17

was about two feet or twenty inches or some other amount, showing that the only knowledge they have is based on an indefinite recollection extending over a period of a great many years. Some of them, however, testify as to recent years when the fence, or a part of it had been removed.

After a very careful scrutiny of this evidence,—because we have gone over it item by item, we are very well convinced that the fence was originally east of the true line and that it came perhaps within two feet or twenty inches of the Wolf house;—that it reached certainly east of the present premises of the defendant Ries,—east of the buildings that were placed upon the property by Goodson and those who succeeded him; and that the jury should have found that the line was at this point, in substance; that is to say, where the line has been found,—on the line lying between these two parties and near the house of Ries, the true line would cut off Ries's house by quite a little amount of land. I think one witness testifies that it would take off about sixteen inches, or quite a number of inches any how, according to the testimony of witnesses.

It may not be capable of an exact location, but under the charge of the court and under the evidence, it certainly should have been found to be east of the true line. Instead of that, the jury returned a verdict giving the plaintiff the title to the land up to the true line,—giving him his whole forty-nine feet and six inches, dividing it not according to the area but according to the foot front upon Main street.

There is no question we think, under the laws of this state, and under the decisions that have been cited to us,—the last one being the case of Hells v. Ludwig, 1373, and supported by many previous cases,—that where parties have agreed upon a division line and settled upon it and have occupied up to it for a period of more than twenty-one years, that that bars any suit; indeed, in McNeely v. Langan, 32, they held that where a party had entered by mistake and built over the line three feet and occupied up to it for a period of more than twenty-one years, the party was entitled to hold the property as against what would otherwise be the true owner, holding as they did in that case. (Judge White delivering the opinion), that color of title was not necessary in order to maintain in this state the plea of the statute of limitations.

We think this is not a case similar to cases which are found where there is a mistake as to where the true line is. In that case, under certain conditions and with certain expenses, the party may recover up to the true line; but in this case there was an agreement between these parties. they knew the size of the lot at that time. and where the dividing line was and under some arrangement by which they had bought and under some equity which they recognized between them which is not set forth in Goodson's testimony, they agreed that the line should be made according to area of the lot, and which was placed at this point some feet east of the true line. They built their fence upon it; they built their houses with reference to it and occupied in reference to it for more than a generation of men, and we think now it is too late for the plaintiff to claim that he ought to maintain an action to recover up to the true line, or division line of the lot.

The judgment of the court of common pleas will therefore be reversed the verdict set aside and the case remanded for a new trial.